*[margin note: DAVIESS vs. MYERS. does not exonerate the obligors from any part of the penalty of the bond, but the plaintiff may recover the full value of the property not delivered, not exceeding the penalty of the bond, if necessary to satisfy the decree.]*

---

## Daviess *vs.* Myers.

APPEAL FROM LOUISVILLE CHANCERY COURT.

Judge SIMPSON delivered the opinion of the court.

*[margin: CHANCERY. Case 38. January 21.]*

1. Where an execution has been levied, a *stay of proceedings under it* does not operate a release of the levy, but it still exists, and a sale may thereafter be made; not so where the execution after levy is returned stayed by the plaintiff. (4 *Bibb*, 338; 8 *B. Monroe*, 411.)

2. A tenant for life may purchase at a sale under execution the interest of the reversioner in slaves, but if the debt under which the sale is made, be a legal charge upon the reversionary interest, and an equitable charge upon the life estate, the interest of the reversioner alone can be sold. In such case, if the tenant for life purchase, he is held to have purchased for the benefit of the reversioner, as well as himself. (4 *Monroe*, 297; 5 *Dana*, 446.)

3. Where a tenant for life purchases in an incumbrance upon the estate, the law regards such purchase as made for the joint benefit of himself and the reversioner, and the reversioner is bound to contribute his proportion of the price, and for such contribution, has a lien upon the estate.

DAVIESS
vs.
MYERS.

Case stated.

The slaves in contest in this case belonged to the estate of J. H. Daviess, deceased. They were assigned to his widow as part of her dower in her deceased husband's estate. A judgment having been subsequently recovered against Rowan, the executor of J. H. Daviess, an execution that issued thereon was levied upon the reversionary interest of the slaves in the possession of the dowress, which was sold under the execution, and purchased for her benefit. She then claimed the slaves as her own absolute property, and at her death devised them to Mrs. Jane Taylor.

A controversy exists between the owner of the reversionary interest in the slaves, and the devisee of the dowress, in relation to the title to them. In an action of detinue, brought for them by the reversioner, it was decided that his interest passed by the execution sale, and that the legal title to the slaves was in the devisee. (*Myers* v. *Daviess*, 10 *B. Monroe*, 394.)

He then instituted this suit in chancery, in which he attempts to impeach the sheriff's sale; but to sustain his claim to the slaves, relies mainly upon the ground that the purchase made by the dowress should, in equity, be treated as a purchase for their joint benefit, inasmuch as the debt for which the judgment had been obtained, and to satisfy which the slaves were sold, was a charge not merely on the reversionary interest, but upon the whole estate in the slaves.

1. Where an execution has been levied, a *stay of the proceedings under it* does not operate a release of the levy, but it still exists, and sale may thereafter be made; not so where the execution after levy is returned stayed by the plaintiff. (4 *Bibb*, 338; 8 *B. Monroe*, 411.)

The objection made to the sheriff's sale, upon the ground that the proceedings under the execution had been stayed, and the sale was made after the return day thereof, cannot be sustained. The execution was not returned stayed by the order of the plaintiff, but the *proceedings under* it were stayed, and the execution was retained by the officer. The levy of course still existed, and when the plaintiff directed the sale to be made, the sheriff had full power to make it. In the cases referred to, (4 *Bibb*, 338; 8 *B. Mon.*, 411,) where it was held that the levy had been releas-

ed; the executions were returned stayed by the plaintiff. Here the proceedings under the execution merely were stayed, not the execution itself, and as the sheriff did not return the execution, it is evident that the levy was not intended to be released. But this question was necessarily involved in the suit at law, in determining the validity of the sale, and must be regarded as a matter that has been settled and adjudged between these parties.

We have not been able to procure any foundation for the charge that the sale was fraudulent, so that the result of this controversy must depend solely upon the question, whether in equity the purchase should be considered as having been made for the joint benefit of the life estate and the reversion, or whether the dowress under the circumstances had a right to purchase the reversionary interest and hold it for her own benefit.

A tenant for life may undoubtedly purchase the interest in reversion and thereby acquire an absolute right to the property; and if in this case the reversionary interest had been sold for a debt, due by the reversioner, no question could have arisen in regard to the effect of the purchase. But the debt for which the interest of the reversioner was sold, was a charge upon the life estate, as well as upon the reversion. The only difference between them was that it was an equitable charge upon the life estate, and a legal charge upon the reversion. The latter could be sold under execution, the former could not, but had to be subjected by a suit in chancery; both interests however were equally liable for the payment of the debt; and as between the parties themselves, neither had a right to throw the whole burthen upon the other. According to well settled equitable principles a purchase by either under such circumstances enured to the benefit of both. The established doctrine is, that a tenant for life in possession, in the purchase of an incumbrance upon the estate, is regarded as having made the purchase for the joint benefit of himself

2. A tenant for life may purchase at a sale under execution the interest of the reversioner in slaves, but if the debt under which the sale is made, be a legal charge upon the reversionary interest, and an equitable charge upon the life estate, the interest of the reversioner alone can be sold. In such case, if the tenant for life purchase, he is held to have purchased for the benefit of the reversioner as well as himself. (4 *Monroe*, 297; 5 *Dana*, 446.)

3. Where a
tenant for life
purchases in an
incumbrance
upon the estate,
the law regards
such purchase
as made for the
joint benefit of
himself and the
reversioner,
and the rever-
sioner is bound
to contribute
his proportion
of the price, and
for such contri-
bution, has a
lien upon the
estate.

and the remainder-man or reversioner, and cannot
hold it for his own exclusive benefit. (4 *Mon.* 297 ;
5 *Dana*, 446.)

The slaves were liable for the payment of this debt,
which was a demand against the estate of J. H. Da-
viess, deceased. A life estate in slaves is frequently
of more value than the interest in reversion. The
interest of the dowress may have been liable to be
affected by the charge, to as great an extent as that
of the reversioner. The charge, it is true, had· as-
sumed a character which, so far as the creditor was
concerned, made it devolve in the first instance upon
the reversionary interest, but that did not change the
relative rights of the owners of the estate, or give to
the dowress in equity any advantage over the rever-
sioner. The reversionary interest was sold and pur-
chased by the tenant for life, at probably one-
fifth part of the value of the slaves, and this was
done to remove an incumbrance, which it was her
duty to have aided in discharging. Under these cir-
cumstances equity requires that the purchase made
by her should be considered as having been made for
the joint benefit of the parties, and that the reversion-
er should be bound to contribute his ratable pro-
portion of the money which was paid by her, and
thereby be entitled to the reversionary interest in the
slaves, the title to which was held in trust for him,
and which in equity he has a right to subject to the
liability that devolves upon him, to contribute his due
proportion of the purchase money.

It appears that some of the slaves were sold by the
dowress and her husband after she had purchased at
the sheriff's sale, and that from these sales a larger
sum of money was probably realized than had been
applied by her to the payment of the debt. But as
the amount of these sales does not certainly appear,
it may become necessary to ascertain it upon the re-
turn of the cause to the court below, if the devisee of
the tenant for life should require it to be done.

Wherefore the decree is reversed, and cause remanded with directions to render a decree vesting the title of the slaves in contest in the complainant, and enjoining the defendant from proceeding at law for restitution. If, however, the contribution which the complainant was bound to make on account of the purchase at the sheriff's sale, has not been realized from the sales made during the lifetime of the dowress, the balance must be ascertained and decreed against him, and its payment enforced by retaining a lien upon the slaves for the purpose.

*Morehead & Brown,* for appellant; *Ballard,* and *Fry & Page,* for appellee.